Richard W. JOHNSON

v.

**NCB COLLECTION SERVICES.**

**Civ. No. 3:91–326 (JAC).**

United States District Court, D. Connecticut.

July 23, 1992.

Ruling on Motion to Alter and for Reconsideration Aug. 21, 1992.

Joanne S. Faulkner, New Haven, Conn., for plaintiff.

Philip D. Jackson, Ciaravino, Jackson & Tedeschi, Freeport, N.Y., for defendant.

## RULING ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND TO STRIKE

JOSÉ A. CABRANES, Chief Judge:

This action arises from a collection letter sent by defendant NCB Collection Services ("NCB") to plaintiff Richard W. Johnson ("Johnson"). The Complaint is framed in two counts. In Count One, Johnson alleges that in sending the letter NCB engaged in various deceptive collection practices in violation of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.* In Count Two, Johnson alleges that NCB's collection practices violated the Connecticut Creditors' Collection Practices Act, Conn.Gen.Stat. § 36–243a *et seq.*, the Consumer Collection Agency Act, Conn.Gen. Stat. § 42–127 *et seq.*, and the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–110a *et. seq.*

Pending before the court are plaintiff's Motion for Summary Judgment (filed Dec. 27, 1991), defendant's Cross–Motion for Summary Judgment (filed Jan. 21, 1992), and plaintiff's Motion to Strike Goldberg Affidavit (filed Jan. 28, 1992). Following oral argument, the motions are ripe for decision.

## BACKGROUND

On December 18, 1990, NCB, a "debt collector" within the meaning of the FDCPA, mailed to plaintiff Johnson a letter formally demanding payment on Johnson's account with American Family Publishers. This letter bore the letterhead of NCB and concluded with the printed name and title, "Althea Thomas, Account Supervisor." The name "Althea Thomas" is an alias assigned exclusively to NCB's employee, Diane Tretolo. NCB admits that although Diane Tretolo holds the title of "Account Supervisor," the duties of her position do not involve personal interaction with debtors.

Included on the letter from NCB is a customer service number for any questions the debtor might have regarding the correspondence. The letter states that this phone service is available continuously 24 hours per day, 7 days per week. If a debtor calls this service and requests "Althea Thomas," the operator on duty refers the call to the next available representative and not to Diane Tretolo, the NCB employee assigned the alias "Althea Thomas."

The return address on NCB's letter to Johnson consisted of three lines of printed type located in the upper left corner of the envelope. "Revenue Department" was printed in boldfaced capital letters on the first line. A post office box number and

NCB's city, state, and zip code were printed in regular type on the next two lines. In addition, the words "Personal and Confidential" were printed on the envelope in large, boldfaced, and underlined capital letters. NCB makes no claim that "Revenue Department" is its business or trade name.[1]

Enclosed with the letter in question, NCB included a return envelope and indicated that Johnson should use it to send payment of the debt. On the outside of this return envelope NCB had preprinted its own address along with Johnson's name, address and other encoded information regarding his account. The encoded information consisted of a series of numbers and letters found above Johnson's name in the upper left corner of the envelope. The series appeared as: 500 0651JHNRS173R90 0001495. The last four digits were meant to convey to NCB's staff the amount of Johnson's debt, here $14.95.

Johnson contends that, if used to send payment, the return envelope would have disclosed information about his debts to third parties in violation of the FDCPA. In addition, Johnson argues that the use of the alias "Althea Thomas" and the return address of "Revenue Department" on NCB's collection letter violated the FDCPA.

Johnson moves for summary judgment on Count One, that is, on the claims arising from alleged violations of the FDCPA. In response NCB has filed a cross motion, seeking summary judgment on Count One and dismissal of the pendent state claims brought in Count Two. In addition, Johnson moves to strike the affidavit of Michael Goldberg, which NCB filed in support of its cross motion on January 21, 1992 ("Goldberg Affidavit"). This affidavit purports to set forth legislative history of the FDCPA regarding the use of alias names by debt collectors. For the reasons stated below, Johnson's motion for summary judgment is denied and NCB's cross motion for summary judgment is granted. In addi-

tion, Johnson's motion to strike the Goldberg Affidavit is granted in part and denied in part.

## DISCUSSION

### A.

I first consider Johnson's motion to strike the affidavit of Michael Goldberg. NCB submitted the Goldberg Affidavit in an effort to illuminate the legislative history of the FDCPA. Johnson contends that Goldberg's statements are hearsay and inadmissible.

An affidavit filed in support of a motion for summary judgment must set forth statements that would be admissible into evidence. *Schiess–Froriep Corp. v. S.S. Finnsailor,* 574 F.2d 123, 126 (2d Cir. 1978). Affidavits consisting of merely conclusory statements and hearsay should be disregarded. *See, e.g., Monroe v. Board of Education,* 65 F.R.D. 641, 650 (D.Conn. 1975). Presence of some inadmissible material, however, does not mandate that an entire affidavit be disregarded. *United States v. Alessi,* 599 F.2d 513, 514–515 (2d Cir.1979).

Goldberg's assertions that the members of the Congressional subcommittee responsible for drafting the FDCPA approved of the use of aliases and desk names would be inadmissible into evidence, as would his statements maintaining that subcommittee members were aware that the use of aliases was a standard procedure in the collection industry. These assertions are clearly hearsay since they purport to declare the collective intent and awareness of the subcommittee. Moreover, the relevance of such private impressions is questionable in light of the existence of an official legislative history. Johnson's motion to strike with respect to these statements is therefore granted.

Goldberg's statement that the use of aliases and desk names in the collection

1. Subsequent to the sending of the letter to Johnson, the United States Postal Service promulgated regulations requiring that a return address include some form of company identification, and NCB will comply by using some version of the NCB name. Affidavit of Jerome Field (filed Jan. 21, 1992) ("Field Affidavit") at 5.

industry existed prior to the passage of the FDCPA, however, constitutes admissible evidence. As past president of the American Collectors Association, Goldberg made these statements based on his own personal knowledge. Johnson's motion with respect to these statements is therefore denied.

### B.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

### C.

Johnson's initial contention is that NCB's use of the name and title "Althea Thomas, Account Supervisor" violated the FDCPA's prohibitions on the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Johnson argues that the use of an alias or office name on a "collection letter" is a deceptive practice and therefore a *per se* violation of the FDCPA. The use is misleading, Johnson explains, because a debtor receiving a letter using an alias or office name would naturally assume that the name would correspond to an actual person.

NCB, on the other hand, contends that the use of "desk names" and aliases is a widely-used practice in the collection industry that predates the passage of the FDCPA. Goldberg Affidavit at 2; Field Affidavit at 1. NCB moreover asserts that the use of aliases is essential for the protection of its employees. Collection employees, NCB avers, occupy a vulnerable position when required to reveal their true identities in communications with debtors. NCB argues that collection agencies use aliases or office names to avoid subjecting their employees to the possible reprisals of irate and frustrated debtors.

Whether the use of an assigned alias on written communication violates the FDCPA is, of course, a question of statutory construction. Nowhere in its several specific provisions does the FDCPA explicitly prohibit the practice. Johnson contends only that the use of the alias violates the introductory language of 15 U.S.C. § 1692e, which broadly prohibits the use of "any false, deceptive or misleading" practice in the collection of debts.

While the use of an alias or office name may be in some sense a "false representation," it does not *ipso facto* violate the FDCPA. "[S]tatutory language must always be read in its proper context. In asserting the plain meaning of [a] statute,

the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *McCarthy v. Bronson,* — U.S. —, —, 111 S.Ct. 1737, 1740, 114 L.Ed.2d 194 (1991) (quotes and citations omitted).

The purpose of the FDCPA is "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices *without imposing unnecessary restrictions* on ethical debt collectors." S.Rep. No. 382, 95th Cong. 1st Sess. 1, 2, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696 (emphasis supplied); *see also Higgins v. Capitol Credit Servs., Inc.,* 762 F.Supp. 1128, 1135 (D.Del.1991) (Congress intended to avoid imposing unnecessary restrictions on ethical debt collectors). The FDCPA contains many specific provisions expressly prohibiting an extensive list of deceptive practices. In addition, the FDCPA includes several broadly phrased provisions intended to "enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed" by the act. S.Rep. No. 382, *supra,* at 1698. A court must thus decide whether an allegedly "deceptive" practice violates a broader general provision of the FDCPA by balancing the extent to which the practice may deceive or harm a consumer against the burden its prohibition would place on an honest debt collector. *Pressley v. Capital Credit & Collection Serv., Inc.,* 760 F.2d 922, 924–5 (9th Cir.1985) (per curiam); *but cf., Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 27 (2d Cir.1989) (balancing precluded where statutory mandate is clear). In so deciding, however, the court must evaluate the practice from the standpoint of the least sophisticated debtor. *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1175 (11th Cir.1985); *Swanson v. Southern Oregon Credit Serv., Inc.,* 869 F.2d 1222, 1225 (9th Cir.1988) (per curiam); *Woolfolk v. Van Ru Credit Corp.,* 783 F.Supp. 724, 726 (D.Conn.1990).

For guidance in making this determination, the court should look to the balance Congress struck in the specific prohibitions of the statute itself. Significantly, the FDCPA by its terms does not explicitly prohibit the use of aliases in communication with debtors. In the particular instance of telephone calls placed directly to a debtor, the FDCPA requires only that a debt collector make a "meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). The Federal Trade Commission ("FTC") has stated that the disclosure of a consistently used alias that permits the actual identification of the caller constitutes "meaningful disclosure" under this portion of the statute. Federal Trade Commission Commentary on FDCPA, 53 Fed. Reg. 50097, 50105 (1988). Although it is true that the FDCPA prohibits the FTC from promulgating new rules or regulations to supplement the statute, 15 U.S.C. § 1692*l*(d), the FTC is the administrative body empowered by Congress to enforce the FDCPA and its interpretation of the statute is entitled to at least "some weight." *Staub v. Harris,* 626 F.2d 275, 279 (3d Cir.1980); *Masuda v. Thomas Richards & Co.,* 759 F.Supp. 1456, 1464 n. 15 (C.D.Cal.1991). The interpretation by the FTC here is both reasonable and persuasive, and accords with the judicial decisions on point. *See, Wright v. Credit Bureau of Georgia, Inc.,* 548 F.Supp. 591, 597 (N.D.Ga.1982), *on reconsideration,* 555 F.Supp. 1005 (N.D.Ga.1983) (use of desk name did not violate the requirement of meaningful disclosure of the caller's identity during phone calls); *Kleczy v. First Federal Credit Control, Inc.,* 21 Ohio App.3d 56, 21 OBR 59, 486 N.E.2d 204, 206 (1984) (same).

The potential for abuse or harassment by debt collectors is far greater in telephone calls than in written communication. Telephone calls provide for direct personal contact between a debt collection employee and a debtor without leaving a clear record or transcript of the communication. The FDCPA, however, does not prohibit the use of assigned aliases in phone calls, requiring no more than "meaningful disclosure" to guard against abuse. 15 U.S.C. § 1692d(6). Congress obviously determined that the harm that accompanied the use of assigned aliases in telephone conversations did not outweigh the burden their prohibition

would place on honest debt collectors. Since the potential for abuse in written communication is undoubtedly less than in telephone contact, it would be anomalous to interpret the FDCPA to prohibit broadly any use of assigned aliases in written communications.

Johnson principally relies on cases in this district that have held that the use of a fictitious name on a collection letter is a "false and misleading statement under the FDCPA and mandates entry of summary judgment in favor of the plaintiff." *See Hunter v. NCB Collection Servs.*, Civ. No. N–89–342 (WWE) (D.Conn. June 29, 1990); *Spalding v. NCB Business Servs.*, Civ. No. N–89–560 (AHN) (D.Conn. April 12, 1990). Although the holdings of these cases might be questioned, the cases are in any event clearly distinguishable. In neither *Hunter* nor *Spalding* is there any indication that the name and title used on the letters corresponded to any actual employee of the defendant. *Hunter, supra,* slip op. at 3; *Spalding, supra,* slip op. at 2. In this case it is undisputed that "Althea Thomas" is a specific alias assigned to only one of NCB's employees.

In the alternative, Johnson argues that even if the assignment of the "Althea Thomas" alias to a designated employee did not of itself violate the FDCPA, the fashion in which NCB subsequently used the name was a violation nonetheless. Johnson notes that if a debtor calls NCB using the phone number provided in the collection letter and requests "Althea Thomas," the debtor's call is referred to next available NCB representative. The telephone operator does not forward the call to Diane Tretolo, the NCB employee assigned the alias "Althea Thomas." Johnson charges that this practice negates NCB's contention that the alias refers only to one known individual and that it is deceptive because it could result in an unsuspecting debtor reaching any one of dozens of possible representatives when the debtor calls for "Althea Thomas."

While an allegedly deceptive practice is to be evaluated with reference to the effect on the least sophisticated debtor, *see, e.g.,*

*Jeter,* 760 F.2d at 1175, it is clear to anyone (including the least sophisticated debtor) that a specific representative named in a collection mailing cannot and will not always be available 24 hours per day, 7 days per week. Therefore, no deception occurs even if the answering representative fails to offer that he or she is not "Althea Thomas."

The use of an assigned alias or office name, even when considered from the standpoint of the least sophisticated debtor, does not misrepresent the amount of a debt, the consequences of its non-payment, nor the rights of the contacted debtor. Indeed, at oral argument plaintiff's counsel was unable to adduce any prejudice or harm suffered as a result of the use of the alias in this case. Aliases and office names in fact have long been utilized by collection agencies for the protection of their employees. The burden to an ethical debt collector that would result from prohibiting the use of assigned aliases by designated employees clearly outweighs any abstract benefit to a debtor that such a prohibition might yield. In light of the foregoing, I conclude that printing an assigned office name or alias at the conclusion of a collection letter is not a "false, deceptive or misleading" practice in violation of 15 U.S.C. § 1692e.

### D.

■ Johnson next contends that NCB's use of "Revenue Department" violated the FDCPA's prohibition of a debt collector's use of any name other than its "true" name in 15 U.S.C. § 1692e(14), as well as the prohibition of the use of extraneous words or symbols on the collection letter's envelope in 15 U.S.C. § 1692f(8). Both of these theories are without merit. Clearly, "Revenue Department" was neither intended to be nor could be conceived as the purported "name" of the debt collector. The letter inside the envelope made clear that the communication was from NCB, not from any hypothetical organization calling itself "Revenue Department." There is no likelihood the least sophisticated debtor would believe, on the basis of the letter and

its contents alone, that he was being subjected to the collection efforts of any organization other than NCB.

Johnson's second angle of attack regarding the use of "Revenue Department" is equally unavailing. Johnson contends that the use of "Revenue Department" violates the FDCPA because it could potentially disclose that the enclosed correspondence pertains to debt collection. The FDCPA prohibits a debt collector from "using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer ... , except that a debt collector may use his business name if ... [it] does not indicate that he is in the debt collection business." 15 U.S.C. § 1692f(8). Johnson notes that the purpose of § 1692f(8) is to avoid violating a debtor's privacy by prohibiting any language on the envelope "indicating that the contents pertain to debt collection." S.Rep. No. 382, *supra*, at 1702.

NCB contends that the use of the designation "Revenue Department" was acceptable and appropriate because it was part of NCB's address. NCB additionally argues that it uses the designation in order to distinguish collection letters from other so-called junk mail that a debtor may receive and casually discard. It maintains that § 1692f(8) is poorly drafted, and that the use of the words "Revenue Department" represents a successful attempt to comply with all its strictures.

The words "Revenue Department" in the return address on an envelope arguably might suggest that some credit-related transaction is involved. A revenue department is an entity with which one would ordinarily correspond solely for the purpose of paying a sum of money. However, it is not at all apparent to the casual observer that the use of "Revenue Department" in a letter's return address indicates that the correspondence is specifically from a debt collector. The FDCPA defines "debt collector" as a third party that seeks to collect debts owed or due another. 15 U.S.C. § 1692a(6). It specifically limits the scope of the term so not to include actual creditors who endeavor to collect debts directly on their own behalf. Nothing in the innocuous designation of "Revenue Department" distinguishes the letter from other permissible forms of correspondence such as direct billings from creditors for debts not yet past due. The mere use of the departmental designation "Revenue Department" in the return address of a collection notice is simply not the type of abusive collection practice that the FDCPA was intended to reach. *See Masuda,* 759 F.Supp. at 1466 (statutory purpose of § 1692f(8) would not be served by proscribing benign language).

█ Johnson's final contention is that the return payment envelope NCB included with the collection letter violated the FDCPA. Specifically, Johnson objects to the special encoded printing of his account number and debt amount on the envelope, which he claims is easily decipherable. Johnson asserts that because NCB had also printed Johnson's name and address on the return envelope, the encoded information could have disclosed information about his debts.

The FDCPA prohibits the printing of information on the outside of communication from the collector to the debtor that might disclose the nature of the communication to outside parties. 15 U.S.C. § 1692f(8). This prohibition is deemed necessary to protect the privacy of the debtors. Understandably, the statute has no similar limitations on a communication that is sent from the debtor to the collector because the debtor controls this communication. If Johnson was concerned that damage to his reputation could result if third parties discovered his dealings with collection agencies via the pre-printed return envelopes, Johnson could have easily substituted his own unmarked envelope for his return correspondence with NCB. Although the collection letter requested that Johnson use the pre-printed envelope provided, Johnson makes no contention that its use was mandatory. In any event, Johnson could easily have protected his privacy by dropping the return letter at a postal service collection box rather than allowing it to be picked up as outgoing mail from his home. Lastly, it is hardly appar-

ent that any individual unenlightened in NCB's encoding process could have deciphered Johnson's debt from the printed series of numbers and letters. The enclosure of a payment envelope bearing Johnson's name and address along with encoded information regarding his debt did not violate the FDCPA. Accordingly, summary judgment is granted for the defendant on all claims in Count One.

### E.

In light of the granting of summary judgment for NCB on Count One, all that remains of the Complaint are the undeveloped pendent state claims in Count Two. It is axiomatic that when all federal claims are eliminated prior to trial, a court should decline to exercise jurisdiction over any remaining pendent state claims. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Albany Ins. Co. v. Esses,* 831 F.2d 41, 45 (2d Cir.1987). Count Two is therefore dismissed for lack of jurisdiction.

### CONCLUSION

For the reasons stated above, plaintiff's Motion for Summary Judgment (filed Dec. 27, 1991) (Doc. # 28) is DENIED and defendant's Cross–Motion for Summary Judgment (filed Jan. 21, 1992) (Doc. # 33) is GRANTED. Summary judgment is granted for defendant on Count One only. Furthermore, the pendent state claims raised in Count Two are DISMISSED for want of jurisdiction. Finally, defendant's Motion to Strike Goldberg Affidavit (filed Jan. 28, 1992) (Doc. # 36) is GRANTED in part and DENIED in part. The Clerk is directed to enter judgment for the defendant.

It is so ordered.

### RULING ON MOTION TO ALTER AND FOR RECONSIDERATION

This action arises from a collection letter sent by defendant NCB Collection Services ("NCB") to plaintiff Richard W. Johnson. Plaintiff alleges that in sending the letter NCB engaged in various deceptive practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* and various Connecticut consumer protection laws. Pending before the court is Plaintiff's Motion to Alter and for Reconsideration (filed July 28, 1992), which seeks reconsideration of the court's Ruling on Motions for Partial Summary Judgment and to Strike (filed July 23, 1992), see page 1298, and familiarity with which is presumed.

In seeking reconsideration, Johnson largely reiterates arguments previously made and rejected in the court's earlier ruling. I have reconsidered Johnson's contentions but see no point in repeating the analysis set forth in the court's prior ruling. However, Johnson makes three new arguments that merit brief discussion.

### I.

 Johnson contends that the designation "Revenue Department" used in the return address of the collection letter implies that the letter was sent by a governmental body such as the Internal Revenue Service. Johnson asserts that the use of "Revenue Department" therefore violates 15 U.S.C. § 1692e(9). Section 1692e(9) prohibits "the use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval."

 As noted in the court's prior ruling, collection practices challenged under the FDCPA must be evaluated with reference to their likely effect on the least sophisticated consumer. *See, e.g., Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1175 (11th Cir.1985). However, even under this standard Johnson's contention lacks merit, for two different reasons. First, even the least sophisticated debtor knows that a "Revenue Department" may be part of a department store or other commercial creditor just as it may be a governmental body.

Second, assuming for the argument only that the least sophisticated debtor might momentarily believe that a letter with the return address of "Revenue Department" had been sent from a governmental agency, upon opening of the letter in this case, any debtor would quickly have realized that the letter came from NCB. The letter clearly identified NCB and not some hypothetical governmental body as the source of the communication. Moreover, the communication plainly pertained to the collection of an overdue debt with American Family Publishers and did not suggest the involvement of any entity other than a collection agency. Johnson's contention that the use of "Revenue Department" on the return address of NCB's collection letter violated 15 U.S.C. § 1692e(9) is without merit.

## II.

▓ Johnson's second new contention is that the use of the desk name "Althea Thomas" on NCB's collection letter violated § 1692e(9) because it "create[ed] a false impression as to [the letter's] source." Johnson asserts that although Diane Tretolo (the person to whom NCB assigned the alias "Althea Thomas") is an employee of NCB, she did not write the letter in question, she did not mail the letter herself, she does not personally interact with debtors, and she does not receive complaints from debtors. Johnson argues that Tretolo/Thomas is therefore not the true "source" of the collection letter Johnson received within the meaning of § 1692e(9).

Johnson fails to cite any direct authority for his proposed interpretation of § 1692e(9) and, indeed, misinterprets the statute. Here the "source" of the letter to which the § 1692e(9) refers is clearly the collection agency, NCB. The use of the alias or desk name "Althea Thomas" in this context is accordingly irrelevant. Johnson's reliance on an unpublished opinion by another judge in this District holding that a debt collector may not send out letters signed by outside counsel of which that outside counsel is unaware is misplaced. Here Tretolo/Thomas is an employee of NCB.

## III.

Lastly, in reasserting the contention that the use of an alias or desk name by a debt collector violates the FDCPA, Johnson for the first time draws the court's attention to *Bingham v. Collection Bureau, Inc.*, 505 F.Supp. 864 (D.N.D.1981), and an unpublished slip opinion following *Bingham* without further discussion, *Andrea L. Ransom v. Telecredit Service Corporation*, Civil No. H–91–897 (D.Md. Feb. 5, 1992). *Bingham* does hold that the use of an assigned alias in a telephone conversation violates the FDCPA, 505 F.Supp. at 874, but proffers little by way of discussion or support for its conclusion. Later judicial decisions and administrative interpretations of the FDCPA cited in the court's earlier ruling have not followed the *Bingham* decision. *See Wright v. Credit Bureau of Georgia, Inc.*, 548 F.Supp. 591, 597 (N.D.Ga.1982), *on reconsideration*, 555 F.Supp. 1005 (N.D.Ga.1983) (use of desk name did not violate the requirement of meaningful disclosure of the caller's identity during phone calls); *Kleczy v. First Federal Credit, Control, Inc.*, 21 Ohio App.3d 56, 21 OBR 59, 486 N.E.2d 204, 206 (1984) (same); Federal Trade Commission Commentary on FDCPA, 53 Fed.Reg. 50097, 50105 (1988) (same). The *Bingham* decision is neither controlling nor persuasive and therefore does not disturb the court's prior conclusion on this score.

## CONCLUSION

For the reasons stated above, upon reconsideration I find all of plaintiff's arguments to be without merit. Accordingly, Plaintiff's Motion to Alter and for Reconsideration (filed July 28, 1992) (doc. # 43) is GRANTED, but upon reconsideration the court ADHERES to its ruling granting summary judgment for defendant.

It is so ordered.